VERNON FLORKE, Appellee, v. LEONARD FLORKE, Appellant.

No. 47398.

(Reported in 37 N. W. 2d 911)

JUNE 14, 1949.

REHEARING DENIED SEPTEMBER 23, 1949.

V. O. DeWitt, of Sioux City, for appellant.

Hess & Hess, of Kingsley, for appellee.

HALE, C. J.—Action in equity for appointment of a receiver to take over the property of a partnership to ascertain the interest of each partner therein and for distribution of proceeds to plaintiff and defendant. The answer of defendant admitted the existence of a partnership between the parties heretofore, but alleged that the same was dissolved in the month of August 1942, and asked that an accounting be had to determine the value of the plaintiff's interest in such partnership at said time, and offered to pay to plaintiff the value of such interest. The application for appointment of a receiver was not pressed and the case went to trial without that issue.

The district court held that the partnership was not dissolved in August 1942, but continued to a later date. Certain specific property was awarded to the plaintiff and the balance of such personal property awarded to the defendant, and judgment was entered against the defendant for $5816 with certain deductions, hereafter referred to.

The principal question involved in this controversy is the time of termination of the partnership which was conceded by defendant to have existed in 1941 and prior thereto, but claimed by him to have continued to August 1942, only. During that time the parties were in partnership, farmed and lived at home with their mother and sisters; their father being deceased. Just before August 1942, the brothers were notified to appear before their draft board for induction into the armed services. They both appeared and were informed that one of them would be called into service immediately and the other approximately six months later.

Plaintiff was the younger brother and it was arranged that he was to be the one to go into the service. The defendant had mainly attended to the business matters of the partnership. They were farming four hundred acres at the time, and divided

the profits and expenses. So it was originally planned that the defendant would stay on the farm, take care of the crops, store with a third brother what property they did not have to sell to pay their debts, and arrange for some place for their mother to live before he also left for the service. The younger brother entered the Army and the older brother remained at home and continued the farming operations. Later the defendant was granted an indefinite extension of time before entering the service, and never was called. Of course the arrangement with the draft board changed the situation as is evidenced by their subsequent conduct and actions in relation to the property. The indebtedness was not liquidated and the rest of the property was not stored as had been originally planned. Defendant did not, at any time, notify plaintiff that he considered the partnership dissolved.

The district court found, and we are of the same view, that the defendant continued the farming operations as a partnership for the benefit of himself and the plaintiff. The plaintiff sent money home. Besides the allotment to his mother he sent additional money.

While plaintiff was in the service the defendant married. On plaintiff's return from the service and for some time thereafter plaintiff lived with the defendant and his wife, but some time after moved to town, he having married in the meantime. For some time after plaintiff's return the farming operations of the parties continued much as before, but both were married and lived separately.

The claim of the defendant is that the partnership terminated when the plaintiff left for the service, and that the plaintiff is entitled to recover only the value of one half of the property in August 1942, with interest from that date. On the other hand the plaintiff claims that he is entitled to one half the value of the property at sometime after his return from the service, prior to the institution of this action.

Plaintiff has received from the partnership property a Mercury automobile and a truck. The remainder of the property was at the time of trial in the hands of the defendant. The foregoing findings are the conclusions of the district court at the time of trial and we think fairly and accurately present

the facts as shown by the evidence. As stated, the principal question herein is the time of the termination of the partnership agreement.

Originally the affairs of the partnership were conducted by the older brother and both recognized their obligations to the farm, and while active work was performed by the defendant during plaintiff's time in the service, the plaintiff contributed, as he had heretofore done, to the support of the family. There was not much change in the actual conduct of the partnership. Nor was there much change on the return of plaintiff. While defendant had moved to a smaller farm, plaintiff moved in with defendant and rented what is known as the Prine farm and both continued to work, while the expenses came out of both farms.

Later they shelled corn together, using two trucks—one purchased in 1945 and the other in the Spring of 1946. Apparently, according to the plaintiff, no wages were paid him and when he needed money he asked his older brother for it. The checks for the trucking were issued to the "Florke Brothers." Plaintiff testifies that he got about $1200 out of the corn on the land rented in his name, paid $950 for a tractor, $65 for furniture, and the rest he gave to defendant for payment on the trucks which were registered in the name of the brothers. He testified further that the oats raised on the land in 1946 were stored in defendant's barn and that defendant did not give plaintiff any money for them. It was in July 1946 that an attempt was made at settlement. Apparently the brothers worked on each other's place. Plaintiff's theory of the arrangement may be summed up in his statement on redirect examination: "When I got back I figured that we would go right on the same as before with the same property."

The cattle on feed when plaintiff left were sold the next spring by defendant. The statements made by defendant to the bank for credit, and admitted in evidence, show the financial situation of the partnership at different times during the period in question. On December 11, 1942, which is shortly after plaintiff left for the Army, the assets were $6934, indebtedness $2325, leaving a net worth of $4609. On January 10, 1944, assets are shown as $11,839, current liabilities $4900, leaving a

net worth of $6939. The statement dated January 28, 1946, shows assets $15,532, and current liabilities $3900, a balance of $11,632.

It is unnecessary to go through all this property item by item, but we are satisfied that these statements signed by the senior partner approximately represent the addition to the capital during the period of the continuance of the partnership. That the books were not kept with the precision of a bank's books can be well understood, and it can also be well understood that dealing as they were, in a family relation, they did not reduce to a formal contract their partnership agreement. As we have suggested, their arrangements and management of their affairs had to be adapted to the orders of the draft board and other conditions that arose. That the partnership was continued in the same manner as it had been prior to the enlistment of plaintiff is indicated by the manner in which they conducted the business. We are satisfied that there was no suggestion and apparently no thought or intention of changing the manner in which the business of the partnership had previously been conducted.

We find that the evidence does not support the claim of the defendant that the partnership terminated when the plaintiff left for the service. Defendant used the property and treated it as it had been handled and treated from the beginning of the partnership. So finding, the plaintiff would be entitled to half the property.

We may mention one item which was emphasized in the trial of the case, and claimed to be evidence of a settlement. An excerpt from a letter written by plaintiff to defendant was as follows:

"France, November 9, 1944

"Say, you told me you was going to sell the Ford but you never told me for sure, though. Well, you got a hell of a lot more than it was worth. I don't know what you figure on that Ford when I get back, but I am going to get me a Mercury somehow. * * * I am leaving everything up to you so if you want the $200.00 I got, I will send it to you and when I get

back, I want a new Mercury * * * is all I want and you can do anything you want to."

This letter is interpreted by the defendant as an offer of settlement by the plaintiff to defendant two years after the plaintiff had left the farm and at the time he knew the defendant had continued using the property of the partnership. The district court found that the writer referred to the type of automobile and not to the partnership property. Defendant was unable to obtain a Mercury for his brother, and a Ford was procured for him, but not from the separate assets of the defendant. It would be a strange construction of this letter to consider it a suggestion of settlement. It was a transaction between the brothers who were at the time sustaining a partnership relation.

Several propositions are relied upon by the defendant in addition to the principal claim that the partnership was dissolved at the time plaintiff entered the military service. He asserts that as liquidating partner it was the duty of the defendant to wind up the affairs of the partnership, and, in doing so, he occupied a fiduciary relationship toward the plaintiff. He argues also that when a liquidating partner fails to wind up the affairs of the partnership, he is accountable as of the date of dissolution; that interest to a partner upon his share of the capital of a partnership after dissolution is allowed only from the date of judgment establishing and fixing such interest; that the preponderance of the evidence shows that a private settlement or an accord and satisfaction has been made and completed between the parties.

The difficulty with these arguments is that since we hold that the partnership still existed until the beginning of the suit there was no liquidating party, and we hold that the evidence indicates that the partnership was not going into liquidation, and the same may be said of the accountability date of a liquidating partner. Nor do we agree that a preponderance of the evidence shows that a private settlement or an accord and satisfaction has been made and completed between the parties, as we have heretofore stated.

It is not entirely clear just what the final award to the plaintiff was. The original amount of the judgment was $5816, but it appears from the argument of the plaintiff that the amount should be $3666, since by subsequent proceedings of the district court the personal property was distributed in a different manner than in the original decree and various corrections were made therein. These credits may not appear on the record of the clerk of the district court and for that reason we are remanding the case to the district court for the purpose of entering the amount of credit due the defendant by the redistribution of the personal property, and to enter the amount of judgment as corrected by subsequent proceedings.

As thus directed the cause is affirmed.—Affirmed and remanded with directions.

All JUSTICES concur except MANTZ, J., not sitting.